**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 03-cr-90-4 |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| JULIAN SALAZAR. | ) | |
| _____ | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Julian Salazar received a life sentence on January 21, 2009 based on his involvement in a violent street gang. He now moves for resentencing under the First Step Act.

For the following reasons, his motion is denied.

**Background**

In May 2006, Defendant Julian Salazar was charged by a second superseding indictment with multiple counts, including racketeering conspiracy (Count One), conspiracy to murder (Counts Three and Four), and conspiracy to distribute controlled substances (Count Nine). *See* Second Superseding Indictment (Dckt. No. 227). Each count was connected to Salazar's membership in the Insane Deuces gang.

The racketeering conspiracy (Count One) alleged conspiracies to commit murders and to distribute drugs, including cocaine, crack cocaine, and marijuana. *Id.* at 14, 22.

Counts One and Nine of the indictment charged Salazar and the other Defendants with conspiring to distribute a specific quantity of drugs. Specifically, the indictment charged them with conspiring to distribute (1) more than 5 kilograms of cocaine; (2) more than 50 grams of crack cocaine; and (3) more than 1,000 kilograms of marijuana. *Id.* at 23, 32.

Salazar proceeded to a jury trial, which lasted several months. *See* 10/8/08 Order (Dckt. No. 1068); *United States v. Benabe*, 436 F. App'x 639, 642 (7th Cir. 2011). In April 2008, the

jury convicted Salazar on all counts. *See* Jury Verdict (Dckt. No. 939); *see also* 4/21/08 Order (Dckt. No. 939).

Additionally, the jury returned a special verdict finding that Salazar was responsible for the murders of David Lazcano, David Morales, and Erbell Valez. *See* Special Verdict Form (Dckt. No. 933); *see also* PSR, at 14 (Dckt. No. 1293).[1] And at sentencing, Salazar was also found accountable for the distribution of 150 kilograms of cocaine, at least 1.5 kilograms of crack cocaine, and at least 1,000 kilograms of marijuana. *See* PSR, at 24 (Dckt. No. 1293).

Because of these large quantities of drugs, Salazar faced a mandatory minimum sentence of 10 years' imprisonment and a maximum sentence of life in prison. *See* 18 U.S.C. § 1963(a); 21 U.S.C. § 841(b)(1)(A)(ii), (iii), (vii) (1996); *see also* PSR, at 42 (Dckt. No. 1293).

On January 21, 2009, Judge Castillo sentenced Salazar to life imprisonment as to Count One (again, racketeering conspiracy), ten years' imprisonment as to Count Three (attempted murder), 48 months' imprisonment as to Count Four (attempted murder), and 20 years' imprisonment as to Count Nine (drug conspiracy), with all terms to run concurrently. *See* Judgment, at 2 (Dckt. No. 1276).

Salazar has now filed a *pro se* motion for relief under section 404 of the First Step Act. *See* Def.'s Mtn. (Dckt. No. 1914). His counsel subsequently filed a supplemental motion. *See* Def.'s Supp. Mtn. (Dckt. No. 1991). In both, Salazar requests a new sentence.

---

[1] At first, this Court was not able to access the presentence investigation report ("PSR") on the docket, given the age of the case. The docket entry was merely a slipsheet saying "SEALED/RESTRICTED DOCUMENT." The PSR was not on CM/ECF, sealed or unsealed. So, this Court reached out to the operations department in the Clerk's Office, and the capable staff checked for the PSR in the vault for sealed documents. The PSR was not in the vault, either, and the staff believed that it was returned to the Probation Department after the appeal. At that point, this Court reached out to Probation, and obtained copies of the PSRs for Salazar and the related defendants. This Court has directed the Clerk's Office to put them on the docket, under seal, given that the Court is relying on them when ruling on an assortment of pending motions. The PSRs now appear at the location of the original docket entries. So, for example, a sealed copy of the PSR for Salazar now appears at docket number 1293.

## Analysis

Section 404(b) of the First Step Act allows "[a] court that imposed a sentence for a covered offense" to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." *See* First Step Act, Pub. L. 115-391, 132 Stat. 5194, 5222 (2018). The Fair Sentencing Act, in turn, "increased the drug amounts triggering mandatory minimums for crack trafficking offenses from 5 grams to 28 grams in respect to the 5-year minimum and from 50 grams to 280 grams in respect to the 10-year minimum." *See Dorsey v. United States*, 567 U.S. 260, 269 (2012). So the First Step Act "allows district courts to reduce the sentences of criminal defendants who have been convicted of" specific crack cocaine offenses. *See United States v. Hudson*, 967 F.3d 605, 607, 610 (7th Cir. 2020).

"Sentence reduction under § 404 is a two-step inquiry." *United States v. McSwain*, 25 F.4th 533, 537 (7th Cir. 2022). First, the district court asks "whether the defendant is eligible for a sentence reduction." *Hudson*, 967 F.3d at 1610. Second, it asks "whether it *should* reduce the sentence." *Id.* (emphasis in original).

When considering step two of the inquiry, "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." *See Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022). For example, district courts may consider "evidence of postsentencing rehabilitation and unrelated Guidelines amendments when raised by the parties." *Id.* at 2402–03; *see also United States v. King*, 40 F.4th 594, 596 (7th Cir. 2022) (noting that *Concepcion* "held that, when substantive changes made by the First Step Act (principally reductions in the authorized ranges

for crack-cocaine crimes) entitle a prisoner to be resentenced, the judge may consider everything that would have been pertinent at an original sentencing").

A district court must also explain its reasons and address the parties' arguments. "[W]hen deciding a First Step Act motion, district courts bear the standard obligation to explain their decisions and demonstrate that they considered the parties' arguments." *See Concepcion*, 142 S. Ct. at 2404; *see also United States v. Newbern*, 51 F.4th 230, 232–33 (7th Cir. 2022).

Here, the government challenges both steps. It argues that Salazar is not eligible for relief under the First Step Act "because neither the Fair Sentencing Act nor the First Step Act reduced his statutory sentencing exposure under any count of the second the [sic] superseding indictment, including Counts One and Nine." *See* Gov't Resp., at 6 (Dckt. No. 2001). And it argues that, even if Salazar is eligible, the Court should decline to change his sentence. *Id.* at 9–11. The Court addresses each argument in turn.

## I.      Eligibility for a Sentence Reduction (Step 1)

The government's first argument is that Salazar is not eligible for relief under the First Step Act for Count One, the racketeering charge, and Count Nine, the conspiracy to distribute controlled substances charge. The Court disagrees. The government is getting a little ahead of itself, making an argument about step two at step one.

Count Nine charged Salazar with conspiracy to possess with the intent to distribute 5 kilograms of cocaine, over 50 grams of cocaine base, and over 1,000 kilograms of marijuana. And Count One charged Salazar with a RICO conspiracy to distribute the same.

The government agrees that the Fair Sentencing Act modified the sentencing range for Salazar's crack cocaine-related offenses. *Id.* at 6. The range was 10 years to life at sentencing, but it would be 5 to 40 years today. *Id.*

4

But the government notes that his sentencing range for the cocaine and marijuana offenses did not change. *Id.* at 6–7. For those two offenses, Salazar faced 10 years to life, and he would face the same range today. *Id.*

As a result, the statutory penalties Salazar faced were 10 years to life in 2009 and remain 10 years to life today. *Id.* at 8. So, according to the government, Counts One and Nine are not a "covered offenses" because the Fair Sentencing Act did not change his sentence. *Id.*

The government also argues that Count One is not a covered offense for another reason. In Phase II of the trial, the jury made special findings that the government had proved that Salazar had committed multiple murders in a cold, calculated, and premeditated manner pursuant to a preconceived plan, scheme, or design. *See* PSR, at 14 (Dckt. No. 1293); Gov't Resp., at 9 (Dckt. No. 2001). The government contends that, as a result of these findings, the statutory penalty for Count One was not amended by the First Step Act, because the Act "had no impact on the statutory maximum of life imprisonment, which was based on the jury's findings related to the murders." *See* Gov't Resp., at 9 (Dckt. No. 2001).

The Government misreads the First Step Act. First, "when a defendant has been sentenced for two crimes, only one of which is covered by the First Step Act, 'a district judge has discretion to revise the entire sentencing package.'" *McSwain*, 25 F.4th at 538 (quoting *United States v. Hible*, 13 F.4th 647, 652 (7th Cir. 2021)).

Second, "conspiracy to traffic crack cocaine in violation of 21 U.S.C. § 841(b)(1)(A)(iii) is a covered offense, even if another object of the conspiracy triggered the same statutory penalty range." *Id.* at 539 (quotation marks omitted). It is the statute of conviction, not actual conduct, that determines eligibility for relief under the First Step Act. That is, the Seventh Circuit has joined most of its sister circuits in deciding that a covered crack offense, even when paired with

non-covered offenses, is enough to get past step one of the First Step Act's inquiry.  *Id.* at 538 (collecting cases); *see also United States v. Clay*, 50 F.4th 608, 611 (7th Cir. 2022) ("We need not conclusively resolve the question whether a defendant is eligible for First Step Act relief when convicted of a multi-drug conspiracy; we accept the government's concession that these defendants are eligible.  We further note that the emerging consensus from our sister circuits is in accord with the government's position.").

The "court must ask 'whether the Fair Sentencing Act modified the statutory penalties for petitioner's offense,' not whether the Fair Sentencing Act modified the penalties for petitioner's *specific conduct*."  *See United States v. Richarson*, 2023 WL 2058309, at *3 (N.D. Ill. 2023) (emphasis in original) (quoting *Terry v. United States*, 141 S. Ct. 1858, 1862 (2021)).

Here, the fact that Salazar's conspiracy covered acts beyond those that the Fair Sentencing Act and First Step Act contemplated does not preclude him from seeking (or receiving) a new sentence.  His crack cocaine conviction and sentence authorize this Court to give him relief.

## II.     Discretionary Considerations (Step 2)

This Court can award relief.  The next question is whether it *should*.  Step two requires a district court "to undertake a 'complete review' of [the defendant's] motion and to determine whether he is entitled to relief."  *See United States v. Shaw*, 957 F.3d 734, 743 (7th Cir. 2020) (quoting First Step Act, Pub. L. 115-391, 132 Stat. 5194, 5222 (2018)).

A district court is under no obligation to reduce a defendant's sentence if that defendant qualifies for relief.  *See United States v. Fowowe*, 1 F.4th 522, 529 (7th Cir. 2021); *United States v. Corner*, 967 F.3d 662, 665 (7th Cir. 2020).  But the court must follow certain procedures before it makes its decision.

Specifically, it "must begin by recalculating the statutory minimum and maximum that would have applied had §§ 2 and 3 of the Fair Sentencing Act been in effect at the time the movant was originally convicted." *Fowowe*, 1 F.4th at 529. And then, the court must calculate how the change to the statutory range affects the Sentencing Guidelines range. *See Concepcion*, 142 S. Ct. at 2402 n.6 ("[T]he First Step Act directs district courts to calculate the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense. That Guidelines range anchors the sentencing proceeding.") (cleaned up).

At that point, a district court is "authorized – as distinct from required – to consider" the "plethora of factors" in 18 U.S.C. § 3553(a) to determine the appropriate new sentence. *Id.* A district court "may consider all relevant factors when determining whether an eligible defendant merits relief under the First Step Act," including "different statutory penalties, current Guidelines, post-sentencing conduct, and other relevant information about a defendant's history and characteristics." *Hudson*, 967 F.3d at 611–12. The entire "menu of legal and factual considerations" is on the table. *See Fowowe*, 1 F.4th at 529.

In determining whether it *should* reduce Salazar's life sentence to something else, the Court considers the underlying offense, Salazar's recent submissions, and the factors in 18 U.S.C. § 3553(a). *See Concepcion*, 142 S. Ct. at 2403; *Fowowe*, 1 F.4th at 529. This Court has taken the entire record into account, including everything in the PSR.

### A.      Recalculating the Statutory Range and Guidelines Range

The Court begins by recalculating the statutory minimum and maximum penalties that would have applied if the Fair Sentencing Act had been in effect at the time of Salazar's conviction, and then recalculating the Guidelines range based on that change.

The Court concludes that Salazar's statutory minimums and maximums would have remained the same. If the Fair Sentencing Act were in place during his sentencing, Salazar would have faced the same sentence of 10 years to life imprisonment for Counts One and Nine because the Act did not alter the minimum or maximum ranges for the quantities of cocaine or marijuana that Salazar was found accountable for. And based on a review of Salazar's PSR, the Court likewise concludes that Salazar's recommended sentence under the Sentence Guidelines would have remained life in prison.

Salazar's offense conduct involved much more than crack cocaine. He was convicted of conspiring to possess, with the intent to distribute, three separate drugs. Counts One and Nine charged Salazar with conspiring to possess with intent to distribute (1) over five kilograms of cocaine, (2) over 50 grams of crack cocaine, and (3) over 1,000 kilograms of marijuana. *See* Second Superseding Indictment, at 23, 32 (Dckt. No. 227).

The Fair Sentencing Act affected the statutory penalty for only one of those drugs (crack cocaine). The Act "raised the quantity of applicable drugs that triggered a ten-year mandatory minimum prison term; the Fair Sentencing Act changed the amount from an offense involving fifty grams of crack cocaine under prior federal law to two hundred and eighty grams." *See Fowowe*, 1 F.4th at 525.

At the time of Salazar's conviction, however, a conspiracy conviction based on any *one* of the three quantities of drugs – including five grams of cocaine and 1,000 kilograms of

marijuana – would have resulted in him receiving a mandatory minimum sentence of 10 years in prison and a maximum of life in prison.  *See* 21 U.S.C. § 841(b)(1)(A)(ii), (iii), (vii) (1996).

The Act did not change the penalty for conspiring to possess with the intent to distribute cocaine or marijuana.  Conspiring to distribute both drugs at those quantities *still* would have triggered a 10-year mandatory minimum prison term with a maximum term of life in prison for Salazar.  *See* 21 U.S.C. § 841(b)(1)(A)(ii), (vii) (2022).

So, Salazar's statutory range would have been the same.  The Fair Sentencing Act did not alter the minimum or maximum ranges for the quantities of cocaine or marijuana that the jury found him accountable for.  Reducing the statutory sentence for crack cocaine would have had no impact when the statutory sentences for cocaine and marijuana remained 10 years to life.  *See Richarson*, 2023 WL 2058309, at *6 (noting that "the guideline range . . . would have remained life imprisonment even if the Fair Sentencing Act's amendments had been in place at the time of the offense" because "the jury found Tate guilty of conspiracy to possess with intent to distribute controlled substances and the original sentencing court found by a preponderance of the evidence that 149 kilograms of heroin and 25 kilograms of cocaine base were reasonably foreseeable to Tate; thus making him subject to 21 U.S.C. § 841(a)(1)(A)").

Even if Congress had eliminated the penalty for crack cocaine offenses altogether, the answer would be the same.  Salazar's offenses based on cocaine and marijuana would still have triggered the mandatory minimum of 10 years, and the maximum of life in prison.

After recalculating the statutory minimum and maximum sentences, the next step is to recalculate the advisory range under the Guidelines.  And once again, the answer lands in the same place.  The Sentencing Guidelines recommendation would have remained the same – life in prison.

At the time of sentencing, Salazar's *actual* total offense level was 54.  *See* PSR, at 29 (Dckt. No. 1293).  But because the maximum offense level under the Sentencing Guidelines is 43, Salazar's total offense level was treated as if were just 43.  *Id.*  Salazar's criminal history category was set at V, the second highest level, based on Salazar's prior convictions.  *Id.* at 35.

Salazar does not argue that, after applying the Fair Sentencing Act, his total offense level would have fallen below 43 (a 12-point drop).  And the Court's review of the PSR confirms that Salazar's offense level, and therefore his Sentencing Guidelines range, would have been unchanged.  Even if the offense level for the drug-related conduct hypothetically was lower, it would not matter.  The other criminal conduct yielded the total offense level of 54.

The PSR determined the combined offense level by applying U.S.S.G. § 3D1.4.  That provision governs how to calculate the offense level when there is more than one crime.  Under the Guidelines, the first step in determining the combined offense level is "taking the offense level applicable to the Group *with the highest offense level*."  *See* U.S.S.G. § 3D1.4 (emphasis added).

In the end, the drug-related crime (under either Count One or Count Nine) did not produce the highest offense level.  The drug-related crime produced an offense level of 40.  *See* PSR, at 25 (Dckt. No. 1293).  But two other conspiracy acts produced offense levels of 49, given that they involved the murders of David Morales and Erbell Valdez.  *Id.*  So, the drug-related offense made no difference because the other conspiracy offenses produced a higher offense level.

But that's not the end of things.  Under the Guidelines, a district court must identify the "highest offense level" when there is more than one crime.  *See* U.S.S.G. § 3D1.4.  And then, the district court must "increas[e] that offense level by the amount indicated" in a table that follows.

*Id.* Basically, a district court must add up a number of "units," and they can lead to an increase of five offense levels.

But after a defendant accumulates at least five units, everything else is gravy. When a defendant accumulates more than five *units*, the district court must add five *levels* to the offense level. Anything above and beyond five units makes no difference. The table tops out at an increase of five levels. *See* U.S.S.G. § 3D1.4.

Here, Salazar had 6.0 units, and the drug-related conduct contributed only 0.5 units to that total. *See* PSR, at 27 (Dckt. No. 1293). So, even without the drug-related conduct, that score would have led to a five-level increase in the offense level because anything above five units leads to a five-level increase. *See* U.S.S.G. § 3D1.4.

Simply put, the Fair Sentencing Act would not have reduced Salazar's total offense level under the Sentencing Guidelines. His other criminal conduct produced an offense level of 49, so his total offense level still would have been 54 (but again, the offense level is considered to be 43 – the maximum offense level under the Guidelines), even without the drug-related conduct.

Similarly, Salazar does not argue that the Fair Sentencing Act would have changed his criminal history category. Salazar had three previous adult convictions, none of which involved crack cocaine. *See* PSR, at 30–34 (Dckt. No. 1293). Salazar was previously convicted of possession of a stolen motor vehicle, and unlawful possession of a firearm by a convicted felon (twice). *Id.* So, Salazar's criminal history category remains at V.

Salazar has not shown that the Fair Sentencing Act would have changed his benchmark range under the Sentencing Guidelines. In combining his offense level and criminal history category, his recommended sentence would have still been life in prison.

In sum, the Court concludes that the "benchmark" sentencing range for Salazar's conduct would have remained unchanged under the Fair Sentencing Act. If the Fair Sentencing Act were in place during his sentencing, Salazar would have faced the same statutory minimum of 10 years, and the same statutory maximum of life in prison. His range under the Sentencing Guidelines would not have changed, either. His recommended range under the Sentencing Guidelines still would have been life in prison, even if the Fair Sentencing Act had applied.

### B. Exercising Discretion to Reduce the Sentence

The next question is whether the Court should exercise its discretion to reduce Salazar's sentence. Salazar asks this Court to reduce his sentence to time served. *See* Def.'s Supp. Mtn., at 8 (Dckt. No. 1991). Based on the record, the Court declines the invitation. After considering the "plethora of factors" under section 3553(a), the facts do not support a reduced sentence. *See Fowowe*, 1 F.4th at 529. Salazar received the sentence that he deserved.

Salazar's motion focuses on his drug-related offense, but it buries the lead. The jury found him guilty for his role in a violent and wide-ranging RICO conspiracy that involved taking lives. The murders weigh heavily against any reduction of his sentence.

Salazar's involvement – and leadership – in the Insane Deuces Gang lasted for years up until the moment of his incarceration in 2003. *See* PSR, at 17 (Dckt. No. 1293). In his role as Governor of the Aurora faction of the Insane Deuces, Salazar issued and enforced the gang's general standing orders to kill rival gang members. *Id.* at 9. He contributed to the creation of a "war zone" in his community. *See* Sent'g Tr., at 22:11-12 (Dckt. No. 1429). As Judge Castillo observed at Salazar's sentencing, Salazar personally directed other gang members "to just indiscriminately kill people without regard." *Id.* at 22:3-5.

12

The audio recordings at trial demonstrated Salazar's role in the killings and chilled the sentencing court, as they do this Court. At trial, the jury heard Salazar, captured on tape, soliciting several murders. *See Benabe*, 436 F. App'x at 645. Salazar gave the members of his community a "turn Deuce or die" ultimatum – an ultimatum that Salazar enforced. In one gang meeting, Salazar remarked, "[f]or all those new guys to grow up . . . you're going to turn M-F'ing what, Deuce. Why give them the option?" *See* Sent'g Tr., at 13:3-6 (Dckt. No. 1429).

Faced with Salazar's leadership role in this heinous conduct, Judge Castillo concluded that "there really is no other sentence for me to impose other than a sentence of life imprisonment." *Id.* at 23:2-4. Exactly right.

Additionally, Salazar's time in the Insane Deuces came with massive amounts of drugs. Recall that the jury found that Salazar conspired to distribute sufficient quantities of both cocaine and marijuana to trigger the 10-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A). And the PSR found Salazar accountable for over 150 kilograms of cocaine, over 1.5 kilograms of crack cocaine, and over 1,000 kilograms of marijuana. *See* PSR, at 24 (Dckt. No. 1293). Salazar's current motion does not challenge that factual finding, or any factual conclusion that the district court reached at sentencing.

Before the Fair Sentencing Act, a defendant needed to distribute only 50 grams of crack cocaine to qualify for the mandatory minimum sentence. The Fair Sentencing Act increased the amount of crack cocaine needed to trigger the mandatory minimum sentence to 280 grams. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (2022).

The Fair Sentencing Act raised the roof, but Salazar blew right through it. Salazar and his co-conspirators distributed 1.5 kilograms –1,500 grams – of crack cocaine, more than five

times the current level (280 grams) required to get him a minimum sentence of 20 years and a maximum sentence of life.

Even under the Fair Sentencing Act, Salazar could have qualified for the mandatory minimum because the conspiracy involved 1,500 grams of crack cocaine, which is far more than the 280 grams under the new standard. *See Richarson*, 2023 WL 2058309, at *4; *see also United States v. Curb*, 2019 WL 2017184, at *3 (N.D. Ill. 2019).

Of course, the Court recognizes that under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), the Sixth Amendment requires that a jury find beyond a reasonable doubt any fact that would increase a statutory maximum or minimum penalty. And here, the jury did not decide whether Salazar distributed more than 280 grams of crack cocaine (*i.e.*, the current standard). The reason was simple – the standard at that time topped out at anything above 50 grams. Pinning down the exact amount above 50 grams made no difference.

Even so, the Court can consider those facts in the PSR when applying the section 3553(a) factors. *See King*, 40 F.4th at 596 (noting that, when applying the Fair Sentencing Act, "the judge may consider everything that would have been pertinent at an original sentencing"). And the Court can consider the facts in the PSR when deciding whether to exercise its discretion and lower the sentence under the First Step Act.

In sum, the conduct in the case was serious, and then some. In light of the gravity of the crimes, and Salazar's leadership role in the criminality – including issuing orders to kill – Salazar doesn't get very far in seeking a reduction in his sentence.

Overall, the nature and circumstances of Salazar's offenses do not support resentencing. *See* 18 U.S.C. § 3553(a)(1). Murder is a serious offense, and it deserves a serious punishment.

14

Or, as Judge Castillo put it at sentencing, "anyone who gave orders to take life or who actively participated in taking life should then forfeit their life." *See* Sent'g Tr., at 23:5-7 (Dckt. No. 1429). It also remains "a serious matter to play an important role in a conspiracy selling an illegal substance," and "the evolving view towards crack-cocaine offenses does not change that." *See United States v. Price*, 835 F. App'x 141, 142 (7th Cir. 2021).

Applying the other sentencing factors in 18 U.S.C. § 3553(a) also does not support a reduction in Salazar's sentence.

A lengthy prison sentence – consistent with the statutory and Guidelines ranges – is necessary to reflect the seriousness of Salazar's offenses and to promote respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A). Salazar's life sentence is also necessary to deter future criminal conduct, particularly by setting an example to gang leaders who orchestrate drug sales and violence. *Id.* at § 3553(a)(2)(B). As Judge Castillo viewed it at sentencing, life in prison "ultimately is going to be the only way we end gang violence in Aurora or in Chicago or in any other part of this country." *See* Sent'g Tr., at 23:7-9 (Dckt. No. 1429).

Salazar committed serious offenses as a member and leader of the Insane Deuces. "The criminal justice [system] is tired of it, and this is the message that must be made." *Id.* at 23:12-13. Others need to know that they risk hefty punishment by engaging in similar behavior.

Salazar asks this Court to consider in mitigation his strong record of rehabilitation and stable family support system for reintegration. *See* Def.'s Supp. Mtn., at 9–12 (Dckt. No. 1991). They do not move the needle.

The Court acknowledges, and commends, Salazar's rehabilitative efforts. Since his incarceration in 2003, he has earned his GED and completed more than two dozen other educational courses including addiction, leadership, parenting, and math. *Id.* at 9. He has stayed

15

employed, and continues to pay off his court-imposed fines. *Id.* Salazar has not received a disciplinary infraction in over 11 years. *Id.* at 10.

The Court similarly takes note of Salazar's supportive family, which stands ready to help him reenter society. Salazar is fortunate to have a family that can speak to his character and has stuck with him during his lengthy incarceration to date. And this Court has no doubt that Salazar has played and will continue to play a meaningful and positive role in the lives of his sons, nieces, goddaughter, sister, and mother.

But none of these considerations can overcome the inescapable seriousness of Salazar's offenses and his role in a violent criminal enterprise. *See* 18 U.S.C. § 3553(a)(1). The Court must weigh these mitigating factors against the serious nature of Salazar's offenses of conviction and his role in the Insane Deuces. In doing so, the record fails to support any reduction in his sentence. This Court agrees with Judge Castillo that the nature of Salazar's offenses warrants a lengthy – and within Guidelines – sentence.

Finally, Salazar also asks this Court to consider the COVID-19 pandemic. *See* Def.'s Supp. Mtn., at 12 (Dckt. No. 1991). He points to infection rates among facility staff and a low inmate testing capacity as reasons to remove him from a crowded, infection-prone prison population. *Id.* at 12–13. But Salazar has not identified any health issues, lack of vaccination, or other aggravating factors that put him at higher risk for severe illness from COVID-19. In the absence of that evidence, the Court finds no reason to reduce Salazar's sentence on that basis.

In sum, the Court declines to exercise its discretion under the First Step Act to resentence Salazar. Salazar distributed large quantities of drugs that would justify the same sentence even if he were originally sentenced under the Fair Sentencing Act. The serious nature of his violent offenses (including the several murders in which he played a role), and his membership in the

16

Insane Deuces gang weigh against discretionary resentencing. These factors are not overcome by Salazar's rehabilitative efforts, his support system for reintegration, or considerations stemming from the coronavirus pandemic.

## Conclusion

For the foregoing reasons, Salazar's motion for a new sentence is denied.

Date: March 8, 2023

_____

Steven C. Seeger
United States District Judge